IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH ANTHONY BIEBER, | § | |
|     Plaintiff | § | |
| | § | CIVIL ACTION NO. 4:12-cv-305 |
| V. | § | |
| | § | |
| YRC WORLDWIDE, INC., | § | JURY TRIAL DEMANDED |
| AND YRC, Inc. | § | |
|     Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Joseph Anthony Bieber (hereinafter referred to as "Bieber" or "Plaintiff"), Plaintiff in the above styled and numbered cause, and files this his Original Complaint, complaining of YRC Worldwide Inc. and YRC, Inc. (hereinafter collectively referred to as "YRC," "Defendant," or "Defendants"), and for cause of action would show as follows:

### INTRODUCTION

1. This action seeks equitable relief, compensatory and punitive damages, liquidated damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for age discrimination under the Age Discrimination in Employment Act ("ADEA") and violations of the Employee Retirement Income Security Act ("ERISA") suffered by Plaintiff in the course of his employment with the Defendant.

2. Plaintiff complains that he was terminated and discriminated against regarding the terms and conditions of his employment because of his age and in manner which violated his rights under ERISA.

3. The reasons stated by Defendant for Plaintiff's termination were a pretext.

4. Plaintiff has filed a Charge of Discrimination with the EEOC on claims relating to ADEA and ERISA.

**PARTIES**

5. Plaintiff Joseph Anthony Bieber is a male citizen of the United States, who is a resident of Houston, Harris County, Texas.

6. Defendant YRC Worldwide, Inc. (hereinafter referred to as "YRC" or "the Company") is a Delaware Corporation doing business in the State of Texas. Service of the Summons and this Complaint may be made by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

7. Defendant YRC Inc. (hereinafter referred to as "YRC" or "the Company") is a Delaware Corporation doing business in the State of Texas. Service of the Summons and this Complaint may be made by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

8. Whenever in this Complaint it is alleged that a Defendant committed any act or omission, it is meant that the defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of defendant or was done in the routine normal course and scope of employment of the defendant's officers, directors, vice-principals, agents, servants, or employees unless otherwise stated in this Complaint.

## JURISDICTION

9. This action is brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

10. The unlawful employment practices were being committed within the jurisdiction of the United States District Court for the Southern District of Texas, Houston Division, as main location of Plaintiff's employment was at the time located herein.

11. This Court has jurisdiction over all claims in this action.

12. The amount in controversy is within the jurisdictional limits of this Court.

## PROCEDURAL REQUISITES

13. Plaintiff timely filed a charge of age discrimination under the ADEA against Defendant under Charge Number 460-2010-04077 with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division.

14. On or after November 7, 2011, the EEOC issued a Notice of Right to Sue letter entitling Plaintiff to file a civil action in this Court.

15. This lawsuit has been filed within (90) days of Plaintiff's receipt of the Notice of her Right to Sue letter.

16. All other conditions precedent to filing this cause of action have been met.

## FACTS

17. Plaintiff is a male citizen of the United States.

18. Plaintiff's date of birth is December 2, 1960.

19. At all times, Plaintiff was qualified for each of the positions that he held for Defendant.

20. On April 22, 2010, Plaintiff was forty-nine (49) years old.

21. On February 17, 1985, Plaintiff was hired by Roadway Express which was acquired in 2003 by Yellow Corporation and is now known as YRC Worldwide, Inc.

22. During Plaintiff's career he had been transferred several times throughout the United States.

23. Plaintiff's latest transfer with Defendant occurred in May, 2004 to the office located at 9415 Wallisville Road, Houston, Texas.

24. Plaintiff had been promoted multiple times during his employment with Defendant or its predecessor Roadway Express.

25. At the time of Plaintiff's termination, his title was Senior Corporate Account Executive ("SCAE").

26. On the evening of April 21, 2010, Plaintiff received a call at his home from Vice President Rodger Howell ("Howell") who was in the corporate office in Overland, Park, Kansas.

27. During the April 21, 2010 telephone call, Howell told Plaintiff to be in the office at 9:00 a.m. the next morning and, after some conversation, Howell also told Plaintiff that it would be a good idea to have his company car cleaned out.

28. On April 22, 2010, Plaintiff met with the local Houston Operations Manager, Edward Danzer ("Danzer").

29. Danzer met Plaintiff in his office and made a conference call to include Renee Sal ("Sal") in the Human Resources Department in Dallas and Howell at the Corporate Headquarters in Kansas City, Missouri in the meeting.

30. On April 22, 2010, Plaintiff was advised that he was being terminated effective immediately.

31. On Aril 22, 2010, Defendant provided Plaintiff with a proposed Separation Agreement and Release.

32. The severance agreement proposed by Defendant prohibited Plaintiff from seeking employment with any of the top 100 logistics companies for a period greater than the period covered by the severance pay offered by Defendant.

33. Plaintiff did not accept the proposed severance agreement and did not execute the agreement.

34. At the time of Plaintiff's termination, two Corporate Account Executives were selected for termination, both of which were former Roadway employees.

35. At the time of Plaintiff's termination, there were two Corporate Account Executives in Houston.

36. Plaintiff was the Senior Corporate Account Executive ("SCAE").

37. Despite the fact that Plaintiff's performance goals either matched or exceeded the other Corporate Account Executive's goal attainments, Plaintiff was terminated and the other employee was retained.

38. The other Corporate Account Executive was a former employee of Yellow Corporation and he had already attained early retirement benefits.

39. Defendant terminated Plaintiff approximately seven months before he became eligible for early retirement benefits under the Roadway LLC Pension Plan.

40. On April 22, 2010, Plaintiff would have been eligible to receive early retirement benefits under the Roadway LLC Pension Plan ("the Roadway Plan") on Plaintiff's 50th birthday, December 2, 2010.

41. The Roadway Plan provided that Plaintiff would be eligible for early retirement benefits when he turned 50 because his age and years of service would total 75, the number stated in the plan as the eligibility number for early retirement.

42. Shortly before Plaintiff was notified that he was selected for termination by Defendant, Plaintiff had made inquiries to Defendant about the possibility of taking early retirement in December 2010.

43. After Plaintiff was terminated, he requested Defendant bridge his years of service up to and through December 2, 2010 so he could become eligible for early retirement under the Roadway Plan beginning in December 2010.

44. Defendant had previously granted the request of other displaced or terminated employees to bridge similar time periods to make up or close the service shortfall until those employees were eligible for retirement benefits.

45. Defendant refused to bridge Plaintiff's service until he was eligible to apply for early retirement benefits.

46. Because Plaintiff was terminated in April 2010, he is not eligible to collect retirement benefits under the Roadway Plan until he reaches the age of 65 years old.

47. Because Plaintiff was terminated in April 2010, the amount of the retirement benefits he is eligible to receive when he reached the age of 65 is approximately one third the amount of the retirement benefits he would have been eligible to received had he still been employed with Defendant on December 2, 2010 and taken early retirement benefits at that time.

48. If Plaintiff had been employed with Defendant on December 2, 2010 and taken early retirement benefits at that time, he would also have been eligible to receive retiree medical benefits as a retired employee of Defendant.

49. During Plaintiff's employment with Defendant, he was ranked in the top 10 account executives in YRC during 2008 and most of 2009

50. Plaintiff had also received numerous sales awards during his employment with Defendant.

51. Plaintiff did not receive any adverse notices nor had he been counseled, reprimanded or issued a warning or other disciplinary action for poor performance by Defendant during his employment as a SCAE.

52. Plaintiff did not receive any adverse notices nor had he been counseled, reprimanded or issued a warning or other disciplinary action for poor performance by Defendant during the last two years of his employment with Defendant.

53. Defendant failed to follow its own policies and did not give Plaintiff any review or evaluation during the period he worked as a SCAE for Defendant.

54. Defendant is one of the largest transportation service providers in the world.

55. YRC has the largest or one of the largest, most-comprehensive networks in North America with local, regional, national and international capabilities.

56. YRC Worldwide, Inc. is a Fortune 500 company with headquarters in Overland Park, Kansas.

57. YRC employs approximately 125 individuals who live in the Houston, Texas area.

58. YRC employees are both union and non-union.

59. Roadway Express was acquired by Yellow Corporation in 2003.

60. The companies were formally merged in March, 2009 forming YRC Worldwide, Inc.

61. Even though the two companies merged, the pension plans were kept separate and some YRC employees fall under the Roadway LLC Pension Plan ("Roadway Plan") and other employees are covered under the Yellow Corporation Pension Plan ("Yellow Plan"), depending on which company they worked for before the merger.

62. The Roadway Plan is more favorable to retirees and cost more to Defendant over the cost of the Yellow Plan for former Yellow Corporation employees with similar years of service and positions.

63. The Yellow Plan also had a higher point threshold to qualify for benefits under that plan than the requirements for the Roadway Plan.

64. Since the merger, former Yellow Corporation employees have been given preferential treatment in the decisions made by YRC concerning which employees would be retain and which employees will be terminate or selected for a reduction in force.

65. Defendant terminated other older employees who fell under the Roadway LLC Pension Plan and employees of similar age and length of service as Plaintiff.

66. At the time of Plaintiff's termination, Defendant did not select for termination or reduction-in-force younger workers whose job performance was not equal to Plaintiff's job performance.

67. Defendant's stated reasons for Plaintiff's termination are a pretext.

68. Defendant's illegal actions have subjected Plaintiff to substantial damages.

69. Plaintiff has lost substantial pay and benefits as a result of the termination.

70. Plaintiff's base salary at the time of his termination was $94,500.00 per year.

71. At the time of Plaintiff's termination, he also received health and retirement benefits from Defendant.

72. In addition, Plaintiff was eligible to receive performance pay when the established performance goals were exceeded.

## VIOLATIONS OF THE ADEA

73. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

74. By terminating Plaintiff, Defendant violated The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA").

75. Plaintiff was within the ADEA's protected class; i.e., he is over 40 years of age, specifically he was 49 years old at the time of his termination.

76. Plaintiff was qualified for the positions he held for the Defendant, and specifically for the position he held at the time of his termination.

77. Plaintiff was also qualified to assume other positions with Defendant at the time of his termination.

78. There was no legitimate non-discriminatory reason for Plaintiff's termination.

79. There was no legitimate non-discriminatory reason for Plaintiff being selected for termination over other employees who were younger that Plaintiff in similar positions.

80. Plaintiff received no warning, counseling, or reprimand of any kind before his notice of termination to give him any notice of any alleged production or performance problems.

81. Other direct and/or circumstantial evidence exists showing that Defendant intended to discriminate on the basis of age in reaching its decision to terminate Plaintiff.

82. Age was a causal factor in the employment decisions made regarding Plaintiff.

83. As a result of Defendant's' actions, Plaintiff has suffered a loss of wages and benefits in the past and will suffer a loss of wages and benefits in the future.

84. Additionally, the aforementioned discrimination and violation of ADEA was done willfully.

85. An award of liquidated damages is therefore appropriate.

**WRONGFUL INTERFERENCE WITH PLAINTIFF'S EMPLOYMENT BENEFIT RIGHTS**

86. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

87. Pursuant to Plaintiff's employment with Defendant, Plaintiff was eligible to participate in Defendant's employment benefit plans.

88. The employment benefit plan offered by Defendants to its employees is governed by the Employment Retirement Income Security Act, 29 U.S.C. § 1140, *et seq*.

89. In terminating Plaintiff's employment, Defendant interfered with his employment benefit plan, in violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, *et seq.*

90. There was no legitimate reason for Plaintiff being selected for termination over other employee(s) who were participants in the Yellow Plan.

91. Plaintiff has been damaged as a result of Defendant's conduct and sues for all appropriate relief afforded by ERISA.

**ATTORNEY'S FEES**

92. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

93. Plaintiff is entitled to recover attorney's fees and costs for bringing this action pursuant to ADEA, 29 U.S.C. § 621 *et seq*., and ERISA, 29 U.S.C. § 1140, *et seq.*

## DAMAGES

94. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

95. As a result of Defendants' violations of the ADEA, and ERISA, Plaintiff seeks the following relief: (1) back pay; (2) reinstatement, or if reinstatement is deemed not feasible, front pay; (3) loss of wages and benefits in the past and the future; (4) costs of court, expert fees and attorneys' fees; (5) mental anguish and emotional distress in the past and future and (6) pre-judgment and post-judgment interest as allowed by each statute.

96. Also, since Defendants' actions were committed with reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive and or exemplary damages in an amount sufficient to deter Defendant and others similarly situated from this conduct in the future.

97. In addition, since Defendant' actions were committed willfully, Plaintiff seeks an additional equal amount of back pay as liquidated damages under ADEA and punitive damages under ERISA, as allowed by law.

## JURY DEMAND

98. Plaintiff requests a trial by jury on issues triable by a jury in this case.

## PRAYER

WHEREFORE, Plaintiff Joseph Anthony Bieber respectfully prays upon final trial hereof, that this Court grant him appropriate backpay, reinstatement or front pay, including, but not limited to, his salary and lost pension; additional service time to bridge his dates of service; insurance and other benefits past and future; compensatory and punitive damages as allowed by law; liquidated damages as allowed by law, mental anguish damages; reasonable attorney's fees

both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; prejudgment and post-judgment interest as allowed by law; taxable court costs; nominal, actual and exemplary damages as allowed by federal law and any such additional and further relief that this Court may deem just and proper.

Respectfully submitted,

By: /s/ Howard T. Dulmage

Howard T. Dulmage
Attorney-in-Charge
SBOT No. 24029526
Federal I.D. No. 28826
Law Offices of Howard T. Dulmage, PLLC
2323 Clear Lake City Blvd., Suite 180 MB186
Houston, Texas 77062
Tel:     281 271-8540
Fax:    832 295-5797

ATTORNEY FOR PLAINTIFF,
JOSEPH ANTHONY BIEBER

Of Counsel:

Joseph Y. Ahmad
Ahmad, Zavitsanos & Anaipakos, P.C.
State Bar No. 00941100
SD TX I.D. No. 11602
3460 Houston Center
1221 McKinney Street
Houston, Texas  77010
Telephone:    (713) 655-1101
Telecopier:    (713) 655-0062